# In the United States Court of Appeals
## For the Eighth Circuit

ADITYA WAHYU HARSONO,

Petitioner-Appellee,

v.

DONALD J. TRUMP, et al.,

Respondents-Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
District Court Civil No. 25-cv-1976-KMM-JFD
District Court Judge: Katherine M. Menendez

**APPELLEE'S RESPONSE TO APPELLANT'S MOTION FOR VACATUR AND DISMISSAL**

Teresa Nelson, Reg. No. 0269736
Benjamin Casper, Reg. No. 0276145
**AMERICAN CIVIL LIBERTIES UNION OF MINNESOTA**
P.O. Box 14720
Minneapolis, MN 55414
tnelson@aclu-mn.org
bcasper@aclu-mn.org
(651) 645-4907

Kshithij Shrinath, Reg. No. 0505164
**GREENE ESPEL PLLP**
222 S. Ninth Street, Suite 2200
Minneapolis, MN 55402
kshrinath@greeneespel.com
(612) 373-0830

*Attorneys for Petitioner-Appellee*

*(Additional Counsel on Following Page)*

Linus Chan, Reg. No. 0403311
**JAMES H. BINGER CENTER FOR NEW AMERICANS, UNIVERSITY OF MINNESOTA LAW SCHOOL**
190 Mondale Hall
229 19th Street South
Minneapolis, MN 55455
rlchan@umn.edu
(612) 301-1156

Sarah Gad, Reg. No. 0403328
**GAD & GAD LAW OFFICES LLP**
8 East 25th Street
Minneapolis, MN 55404
sarah@gadlawoffice.com
(612) 512-1870

*Attorneys for Petitioner-Appellee*

# INTRODUCTION

In March 2025, Appellants detained Aditya Harsono, a 34-year-old husband and father from Marshall, Minnesota, at the hospital where he works. Harsono had a valid student visa and a pending application to adjust status based on his marriage to an American citizen. The detention came with no notice, warning, or explanation.

Even when an immigration judge held that Harsono was not a flight risk or danger and ordered his release on bond, Appellants refused, invoking a rarely used automatic stay to prolong detention while delaying their appeal to the Board of Immigration Appeals (BIA). Harsono had no choice but to bring a habeas petition. The district court granted his petition, holding that Appellants had detained Harsono in retaliation for exercising his First Amendment rights. Appellants did not seek to stay the order, and Harsono was released.

Appellants now seek to dismiss this appeal as moot and vacate the order below. They represent that, pursuant to the BIA's order affirming the immigration judge's release on bond, they will not re-detain Harsono for the pendency of his removal proceedings. Only through such binding commitments to this Circuit would the appeal be moot. Regardless, Appellants are not entitled to the "extraordinary remedy" of vacatur. *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994). They engineered the circumstances extending Harsono's detention and delaying BIA review. And the public interest favors preserving a strong body of

1

judicial precedents regarding First Amendment rights—the "fixed star in our constitutional constellation." *W. Va. Bd. of Ed. v. Barnette*, 319 U.S. 624, 642 (1943).

## BACKGROUND

### A. Harsono pursues a successful academic career in America.

Aditya Harsono was born in Indonesia and entered the United States on an F-1 student visa in 2015. *Aditya W.H. v. Trump*, 782 F. Supp. 3d 691, 695 (D. Minn. 2025). In 2017, he earned a bachelor's degree in environmental science from Southwest Minnesota State University (SMSU) in Marshall, Minnesota. *Id.* After graduation, Harsono was authorized to work through Optional Practical Training (OPT), a statutory program that allows international students to—as part of their F-1 status—gain practical experience in their field of study. *Id.* Following OPT, in August 2021, Harsono re-applied for an F-1 visa to pursue a Master of Business Administration (MBA) degree at SMSU, which was approved; he had valid F-1 status set to last through June 2026. *Id.* Harsono completed his MBA in December 2023 and, pursuant to his F-1 visa, began working as a supply chain manager at Avera Regional Medical Center (Avera) in Marshall. *Id.*

While pursuing his MBA, Harsono fell in love with his now-wife, a U.S. citizen; the two married in October 2023 and welcomed a baby in late 2024. *Id.* at 696. Harsono applied for permanent resident status based on this marriage. *Id.*

2

**B.    In a decision rife with procedural irregularities, Appellants detain Harsono.**

On March 27, 2025, Harsono was arrested by plainclothes agents from U.S. Immigration and Customs Enforcement (ICE) while at his job at Avera. *Id.* at 699. ICE agents instructed Harsono's coworkers to stage a meeting in the basement of the hospital—where ICE agents seized him, handcuffed him, and transported him in an unmarked vehicle to Kandiyohi County Jail. *Id.* The agents did not tell Harsono why he was being arrested. *Id.*

The next day, at the Fort Snelling ICE Office, Harsono told ICE officials that he had valid status, was lawfully working, and had a pending application to adjust status based on his marriage. *Id.* at 700. The officers claimed that they could not verify what he was saying and instead served him with a Notice to Appear, alleging that he was removable because he remained in the United States after the revocation of his F-1 visa. *Id.* But Harsono had not received any indication that his visa had been revoked. *Id.* Harsono's status in the Student and Exchange Visitor System (SEVIS) still showed as valid on March 28, 2025. *Id.* at 701.

On April 7, 2025, ICE finally provided three documents to Harsono that it asserted supported his removal from the United States: (1) a March 23, 2025 "silent revocation" memorandum from the Department of State ("DOS"); (2) a dismissal order regarding Harsono's 2021 arrest while peacefully protesting, which showed

3

that the charges had been dismissed in the "interests of justice"; and (3) a copy of Harsono's plea petition in a 2022 misdemeanor graffiti case. *Id.* at 700–01.

The documents underscored the irregularities in Appellants' approach. On April 27, 2024, DHS readmitted Harsono to the United States following a visit to family in Indonesia, while knowing about Harsono's prior arrest and misdemeanor conviction. *Id.* at 696.

Furthermore, in the March 23, 2025 memorandum that claimed to revoke Harsono's visa effective immediately, DOS's Bureau of Consular Affairs stated that in response to a request from DHS/ICE, DOS revoked Harsono's visa "effective immediately." *Id.* at 698. The memo "also indicates that DHS/ICE informed the State Department, prior to the revocation of [Harsono]'s visa, that it 'intends to immediately pursue removal of [Harsono].'" *Id.* Appellants did not disclose the written communication from DHS/ICE to DOS that prompted the DOS memorandum or offer "any evidence about why they selected [Harsono] for this action." *Id.* DOS merely relied upon "the underlying information and assessment provided by DHS/ICE." *Id.* Harsono was not notified about this purported revocation—which was characterized as "silent"—until after he was already detained. *Id.* at 698, 700–01.

Appellate Case: 25-2413    Page: 6    Date Filed: 12/18/2025 Entry ID: 5589973

**C.** **After an immigration judge ordered Harsono's release, DHS invoked an automatic stay provision while it appealed to the BIA.**

On April 10, 2025, Harsono appeared for a bond hearing before an immigration judge (IJ). *Id.* at 700. The IJ found that Harsono posed neither a danger nor a flight risk, and set a $5,000 bond. *Id.* at 701. DHS appealed the bond decision to the Board of Immigration Appeals (BIA). *Id.* But, instead of seeking an emergency stay from the BIA or releasing Harsono pending the appeal, DHS invoked an automatic stay provision in the immigration regulations, which permitted DHS to extend Harsono's detention unilaterally. *Id.* (citing 8 C.F.R. § 1003.19(i)(2)). The automatic stay is rarely invoked and only in extraordinary circumstances. *Id.*

**D.** **The district court granted Harsono's petition for a writ of habeas corpus and ordered his release.**

On May 2, 2025, Harsono filed a habeas petition before the district court, asserting First Amendment, Fifth Amendment, and Administrative Procedure Act claims. *Id.* at 701–02.

By order dated May 14, 2025, the district court granted Harsono's petition. *Id.* at 695, 712. The court rejected Appellants' jurisdiction-stripping arguments and held that it "has jurisdiction to consider [Harsono]'s Petition to the extent he challenges his detention as unconstitutional." *Id.* at 703–06. The court then held that Harsono stated a First Amendment retaliation claim: he engaged in protected speech at the

5

heart of the First Amendment's protections, *id.* at 707, and his detention was causally connected to that protected speech, *id.* at 708. In support of causation, the court considered the following categories of affirmative evidence: (1) the "Executive policy to target noncitizen students," (2) the government's "retaliatory motivation through contemporaneous cases involving students that have been detained after engaging in speech like [Harsono's], supporting Palestinian human rights," (3) the government's use of "tools to comb social media accounts," and (4) the differential treatment of Harsono compared to other students with criminal records who did *not* engage in protected activity. *Id.* at 708–09. And the court also noted the "vague and inconsistent" evidence that Appellants offered for a non-retaliatory motive. *Id.* at 709–11.

The district court ordered Harsono to be "released from custody, immediately, subject to the conditions previously imposed by the Immigration Judge, including the $5,000 bond." *Id.* at 712.

**E.** **After Appellants appealed the district court's order, the BIA affirmed the immigration judge's bond decision.**

Appellants did not seek to stay the district court order prior to Harsono's release, and Harsono was released pursuant to the district court's habeas order on May 15, 2025. Appellants filed a notice of appeal of the district court's decision on July 11, 2025. The appeal was docketed on July 18, 2025.

Appellate Case: 25-2413     Page: 8     Date Filed: 12/18/2025 Entry ID: 5589973

By order dated August 6, 2025, the BIA affirmed the IJ's order setting a $5,000 bond for Harsono and dismissed DHS's appeal.

## ARGUMENT

**I.  This appeal is not moot unless Appellants' representations to the Circuit are binding.**

In their motion to dismiss, Appellants state that "any future decision by DHS to detain Harsono would require a different *factual and statutory* predicate for detention." Mot. at 10 (emphasis added). And they state that—even if the district court order were overturned—the BIA's order "precludes DHS from re-detaining Harsono for the remainder of his removal proceedings, just like the district court's order does." Mot. at 9. It appears that the Government is committing that the BIA's decision prohibits re-detention during removal proceedings, and DHS would need a new and different factual and statutory predicate to try and detain him.[1] If so, this appeal may very well be moot. But only with an ironclad commitment would the issues presented by the petition be moot. Accordingly, Appellants should clarify that they are making a binding statement to this Circuit that they will not re-detain Harsono during his bond proceedings unless a "change of circumstance"—as defined by *Matter of Sugay*, 17 I&N Dec. 637 (BIA 1981)—applies.

---

[1] *See Darr v. Carter*, 640 F.2d 163, 166 n.3 (8th Cir. 1981) (where the government assures the Circuit that it will follow a future action, "this court considers the government bound by these representations").

7

A case becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)). If the district court order provides distinct relief compared to the BIA order, then the controversy is still live. *See Council on Am.-Islamic Rels. Minnesota v. Atlas Aegis*, *LLC*, 497 F. Supp. 3d 371, 377–78 (D. Minn. 2020) (finding a live case or controversy where there was not complete overlap between judicial relief and other relief at issue).

Re-detention is prohibited by the district court order. The district court's order requires that Harsono "shall be released from custody, immediately, subject to the conditions previously imposed by the Immigration Judge." *Id.* at 712. And its constitutional ruling prohibits detention in violation of the First Amendment. *Id.* Indeed, the district court's extensive analysis of the proceedings in Harsono's case and findings of constitutional violations provide critical value and context that would color any future detention.

Accordingly, for the BIA order to moot the case, it must be paired with a binding commitment by Appellants not to re-detain Harsono pending his removal proceedings absent a change in circumstances creating a different factual and statutory predicate for detention. *Compare Already, LLC*, 568 U.S. at 93 (mootness established because covenant not to sue was "unconditional and irrevocable"), *with*

8

*Bennie v. Munn*, 822 F.3d 392, 397 (8th Cir. 2016) (rejecting mootness where state regulators retained authority over plaintiff and provided only general assurances against future retaliation).

Appellants' statement in their motion to dismiss appears to be a commitment not to re-detain Harsono. This would follow from governing BIA precedent that requires a "change of circumstance" to alter a "previous bond determination [that] has been made by an immigration judge." *See Matter of Sugay*, 17 I&N Dec. 637, 640 (BIA 1981). Indeed, federal courts have generally agreed that DHS must demonstrate a change in circumstances to re-detain an individual. *See Dadfar v. Arnott*, No. 6:25-cv-3329-MDH, 2025 WL 3452372, at *3 (W.D. Mo. Dec. 1, 2025) ("To satisfy due process, those changed circumstances must represent individualized legal justification for detention."); *Khabazha v. U.S. Immigr. & Customs Enf.*, 2025 WL 3281514, at *6 (S.D.N.Y. Nov. 25, 2025) ("When the government seeks to curtail a person's liberty, the law requires a change in relevant *facts*, not just a change in attitude." (citation omitted)); *dos Santos v. Noem*, No. 1:25-CV-12052-JEK, 2025 WL 2370988, at *9 (D. Mass. Aug. 14, 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *cf. Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (holding that a released person—on parole, in that case—has a significant liberty interest in the "implicit promise" that release "will be revoked only if he fails to live up to the [imposed] conditions"); *Roble v. Bondi*, No. 25-cv-3196, 2025 WL

9

2443453, at *4 (D. Minn. Aug. 25, 2025) (holding that ICE bears a burden to show changed circumstances as the party that "seeks to change the present state of affairs" (quoting *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005)). And a government attorney represented in 2017 that DHS has incorporated the *Sugay* holding into its practice and requires any change of circumstances to be "material." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

But historical practice is not enough to moot this case. Appellants have recently sought to re-detain persons absent a change in circumstances.[2] The Attorney General has the discretion to certify the BIA's appeal to herself and reverse its decision. 8 C.F.R. § 1003.1(h)(1)(i). Regulations purport to provide broad authority to DHS to revoke bond, *see* 8 C.F.R. § 1236(c)(9); although this authority is constrained by the BIA precedent in *Sugay*, the district court's order noted the ample procedural irregularities that dogged the government's pursuit of Harsono. *Aditya*

---

[2] *See, e.g.*, *Phongsavanh v. Williams*, No. 4:25-cv-00426-SMR-SBJ, 2025 WL 3124032, at *5 (S.D. Iowa Nov. 7, 2025) (petitioner detained despite no change in circumstances and dutiful compliance for 25 years); *Salzar v. Robbins*, No. 2:25-cv-05473-VBF-MAR, 2025 WL 2633128, at *3–4 (C.D. Cal. June 18, 2025) (petitioner detained after three years of compliance with conditions of supervision "without hearing and without justification"); *Dejesus v. Bostock*, No. 25-cv-01427-JHC-TLF, 2025 WL 3268802, at *4 (W.D. Wash. Nov. 24, 2025) (petitioner detained despite "dutifully report[ing] in-person 27 times" and without any change in circumstances).

Appellate Case: 25-2413    Page: 12    Date Filed: 12/18/2025 Entry ID: 5589973

*W.H.*, 782 F. Supp. 3d at 709–10. In short, Appellants' practices could change, and absent a binding commitment as to this particular petitioner, they could still seek to detain Harsono under the BIA order without a change in circumstances—an action barred by the district court order.

Accordingly, this appeal is moot only subject to Appellants' binding commitment to the Circuit that they will not re-detain Harsono absent a different factual and statutory predicate; if these representations do not bind Appellants and prohibit re-detention, this case remains live.

## II. Appellants do not satisfy their burden for the "extraordinary remedy" of vacatur.

Even if this case is mooted through Appellants' binding commitment to this Circuit not to re-detain Harsono, Appellants have made no showing sufficient to vacate the District Court's order. When a case has become moot, its disposition is handled "in the manner 'most consonant to justice . . . in view of the nature and character of the conditions which have caused the case to become moot.'" *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 24 (1994) (quoting *United States v. Hamburg–Amerikanische Packetfahrt–Actien Gesellschaft*, 239 U.S. 466, 477–478 (1916)) (ellipses in original). Vacatur is not the de facto solution: it "is an equitable remedy, not an automatic right." *Moore v. Thurston*, 928 F.3d 753, 758 (8th Cir. 2019). "[T]he decision whether to vacate turns on 'the conditions and circumstances of the particular case.'" *Azar v. Garza*, 584 U.S. 726, 729 (2018)

11

(quoting *Hamburg–Amerikanische*, 239 U.S. at 478). The party seeking relief from the judgment below—here, Appellants—bears the burden of establishing "equitable entitlement to the extraordinary remedy of vacatur." *Bancorp*, 513 U.S. at 26.

"The reason for a vacatur remedy must be more than mere disagreement with the decision that one seeks to have vacated." *Banyee v. Bondi*, 131 F.4th 823, 825 (8th Cir. 2025) (Stras, J., concurring) (quoting *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 19 (2023) (Jackson, J., concurring in the judgment)). Indeed, the Supreme Court has instructed that it is "inappropriate" to "vacate mooted cases . . . on the basis of assumptions about the merits." *Bancorp*, 513 U.S. at 27–28. After all, judicial decisions "are presumptively correct and are valuable to the legal community as a whole." *Bancorp*, 513 U.S. at 26 (quoting *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 40 (1993) (Stevens, J., dissenting)).

"In determining whether vacatur is appropriate," then, the Court's "decision is informed almost entirely, if not entirely, by the twin considerations of fault and public interest." *Moore*, 928 F.3d at 758. Appellants must show both that they are not at fault for the mooting of the action and that the public interest weighs in favor of vacatur. *Id.*; *SD Voice v. Noem*, 987 F.3d 1186, 1190 (8th Cir. 2021). Appellants show neither; instead, both factors weigh in favor of denying the motion.

### A. The timing of the BIA's affirmance was not "happenstance."

Appellants assert that the timing of the BIA's order was sheer happenstance. Mot. at 11. Mootness by "happenstance," for vacatur purposes, occurs when the case is moot "due to circumstances unattributable to any of the parties." *Karcher v. May*, 484 U.S. 72, 83 (1987). But the circumstances of any mootness here are directly attributable to Appellants' litigation decisions hampering appellate review.

First, the timing of the BIA's decision is wholly attributable to Appellants. Following the IJ decision, Appellants had the opportunity to seek an emergency stay before the BIA to prevent release. 8 C.F.R. 1003.19(i)(1). A discretionary stay would have accelerated review of the IJ's order and, if granted, prevented immediate release on the IJ order; indeed, seeking such a stay would have been in line with regular DHS/ICE procedures. *See Aditya W.H.*, 782 F. Supp. 3d at 700. But Appellants voluntarily chose a different path, seeking not only to keep Harsono in detention despite the IJ order requiring his release but also to delay adjudication of their BIA appeal. They invoked the rarely used automatic stay provision in 8 C.F.R. § 1003.19(i)(2) and purposefully delayed when the BIA's decision on the IJ order would occur—necessitating a habeas petition to secure Harsono's release. In short, contrary to Appellants' assertion that the BIA's decision "resulted from the *typical*

13

progression of events," Mot. at 11 (emphasis added), Appellants in fact engineered the BIA's delayed decision. They cannot now claim clean hands or "happenstance."[3]

Second, Appellants "slept on [their] rights." *See United States v. Munsingwear*, 340 U.S. 36, 41 (1950). After the district court ordered Harsono's release, Appellants had the opportunity to seek a stay of the decision before the Eighth Circuit. Even after his release, Appellants could have appealed the decision more quickly. The "voluntary forfeiture of review constitutes a failure of equity that makes the burden decisive." *Bancorp*, 513 U.S. at 26. After Appellants chose not to seek review, "wiping the slate clean would create an obvious incentive for unhappy litigations to drag out" the appeal process. *Banyee v. Bondi*, 131 F.4th 823 (Mem), 825 (8th Cir. 2025) (Stras, J., concurring). Appellants should not be rewarded for instead hoping to "stall long enough" so that "an adverse decision might just go away on its own." *Id.* at 825; *see id.* at 826 ("Immigration-related appeals are particularly vulnerable to such manipulation, given that delays are always common . . . .").

A party "frustrated by the vagaries of circumstance" may be an appropriate candidate for vacatur. *Panera, LLC v. Dobson*, 999 F.3d 1154, 1158 (8th Cir. 2020).

---

[3] Moreover, at a structural level, the BIA is an entity within the Department of Justice, and its members are "attorneys appointed by the Attorney General to act as the Attorney General's delegates in the cases that come before them." 8 C.F.R. § 1003.1(a)(1). Its actions—and the timing of its decision—are attributable to Appellant Bondi, who was sued in her official capacity.

14

But that is not the case here. Appellants engineered the circumstances necessitating the habeas petition and mooting the appeal. They are not entitled to the extraordinary remedy of vacatur.

**B.** **The public interest resoundingly weighs against vacatur.**

Even if Appellants had clean hands, "the public interest alone defeats vacatur." *SD Voice*, 987 F.3d at 1190. When considering the public interest, because "judicial precedents are 'presumptively correct and valuable to the legal community as a whole,'" this Circuit recognizes that they "generally should be permitted to stand." *Moore*, 928 F.3d at 758 (quoting *Bancorp*, 513 U.S. at 26).

This is "particularly true" in the First Amendment context. *SD Voice*, 987 F.3d at 1190–91. "'If there is any fixed star in our constitutional constellation,' it is the principle that the government may not interfere with 'an uninhibited marketplace of ideas.'" *303 Creative LLC v. Elenis*, 600 U.S. 570, 584–85 (2023) (quoting *W. Va. Bd. of Ed.*, 319 U.S. at 642 and *McCullen v. Coakley*, 573 U.S. 464, 476 (2014)). A "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Johnson v. Minneapolis Park & Rec. Bd.*, 729 F.3d 1094, 1101–02 (8th Cir. 2013) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

Therefore, the Circuit has held that the public interest is "best served by a substantial body of judicial precedents" regarding the burden on First Amendment

15

rights. *Moore*, 928 F.3d at 758–59. For example, in *SD Voice*, the Circuit declined to vacate a district court's judgment that protected "'core political speech' where 'First Amendment protection . . . is at its zenith.'" *Id.* at 1191 (quoting *Buckley v. Am. Const. Law Found.*, 525 U.S. 182, 186–87 (1999)). The district court's order below works to protect "speech on matters of concern" that "lies at the heart of First Amendment protection." *Aditya W.H.*, 782 F. Supp. 3d at 707. It is valuable to the public and the legal community because it both identifies and remediates First Amendment injuries inflicted by Appellants. It also explains to the public how Harsono was detained and why Harsono was released. Under this Circuit's precedent, it is "particularly true" that such a decision is valuable and should be permitted to stand. *SD Voice*, 987 F.3d at 1190–91.

In their motion, Appellants gloss over the "public interest" requirement in one paragraph, cursorily stating that "'fairness' counsels that the Government should not 'be forced to acquiesce'" in that judgment. Mot. at 13. But that is true of any moot case; as the Eighth Circuit has explained, vacatur does not automatically follow from mootness, and the party must separately demonstrate that the public interest weighs in favor of vacatur. *SD Voice*, 987 F.3d at 1190; *Moore*, 928 F.3d at 758.

Moreover, this cursory statement is a far cry from satisfying Appellants' burden. Vacatur "serves a specific, equitable function: to address any unjust circumstances or unfairness that might stem from the inability to appeal a particular

Appellate Case: 25-2413     Page: 18     Date Filed: 12/18/2025 Entry ID: 5589973

lower court decision, notwithstanding its presumptive validity." *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 18–19 (2023) (Jackson, J., concurring). Because vacatur is an equitable remedy, Appellants, as the parties invoking it, must explain why fairness requires granting their motion. But Appellants have not explained "what harm—other than having to accept the law as the lower court stated it—flows from the inability to appeal the lower court decision." *Id.* Appellants bear the burden, and their inability to identify any harm is itself sufficient to reject their motion for vacatur.

Had Appellants attempted to identify any harm, they would have been unsuccessful. The key purpose driving vacatur is to "clear[] the path for future relitigation." *Moore*, 928 F.2d at 758 (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 71 (1997)). But Appellants have not explained why path-clearing is necessary here. As a matter of stare decisis, a district court decision does not bind any other court, and even the same judge can opt to deviate from it in a future case. *Reid ex rel. M.A.R. v. BCBSM, Inc.*, 111 F. Supp. 3d 966, 968–69 (D. Minn. 2015). In other cases involving claims of First Amendment retaliation, the government will not be bound to the district court's decision and can litigate those issues anew. Meanwhile, as a matter of estoppel, the specific action at issue in the habeas petition—Harsono's detention—has ended. No estoppel or other formal legal

17

consequences attach to Appellants based on the judgment—particularly in light of Appellants' commitment not to re-detain Harsono.

If Appellants nevertheless re-detain Harsono, the district court order has a valuable public role to play in the event of such re-detention. Immigration regulations provide that a noncitizen may be re-detained upon a "change of circumstance." *Matter of Sugay*, 17 I&N Dec. 637, 640 (BIA 1981) (citing 8 C.F.R. § 236.1(c)(9)). Appellants, as the party that would "seek[] to change the present state of affairs," would bear the burden of showing a change in circumstances. *Roble*, 2025 WL 2443453, at \*4 (quoting *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005)). When future adjudicators may have to decide what constitutes a sufficient showing by Appellants to demonstrate a change of circumstances, they should not blind themselves to the events leading up to Harsono's detention in 2025. To be clear, this is not a claim for estoppel: if the government re-detains Harsono, Harsono would again have to establish an unlawful causal connection leading to his new detention. Rather, it is important for any future adjudicators to have a record of events leading up to his 2025 detention. These circumstances inform—but not bind—future adjudicators in determining whether the reasons offered for any future detention were pretextual and tainted by retaliatory intent. Moreover, the public has an interest in having access to the record of events concerning Harsono's 2025 detention and the district court's decision that such detention violated his First

18

Amendment freedoms. Accordingly, the public interest weighs resoundingly in favor of not vacating the district court's order.

### III. Appellants' motion is untimely, and the Circuit can elect to resolve the issue of mootness on merits briefing.

After the appeal was docketed on July 18, 2025, and the BIA order issued on August 6, 2025, Appellants waited for four months before moving to dismiss this case and seeking vacatur. This delay is untimely: Eighth Circuit rules provide that, "[e]xcept for good cause or on the motion of the court, a motion to dismiss based on jurisdiction must be filed within 14 days after the court has docketed the appeal." *See* 8th Cir. R. 47A(b); *cf. Robinson v. Pfizer*, 855 F.3d 893, 896 (8th Cir. 2017) (finding good cause when appellee moved to dismiss six days after case presented mootness issues).

Harsono recognizes that mootness is a jurisdictional issue that the Court must address, *see Faysound Ltd. v. Falcon Jet Corp.*, 940 F.2d 339, 341 n.2 (8th Cir. 1991), but the Circuit can elect not to resolve this issue on an abbreviated and untimely Rule 47A(b) motion, and can instead resolve the issue on full merits briefing. *See, e.g.*, *Knox v. Serv. Emps. Int'l Union, Local 1000*, 565 U.S. 1012 (2011) ("Further consideration of respondent's motion to dismiss as moot is deferred to the hearing of the case on the merits."). Should the Court be left with questions regarding Appellants' representations on mootness or the equitable considerations counseling against vacatur, the court may decline to resolve these issues on

19

Appellants' motion and instead require full briefing on the merits, including the issues presented here.

## CONCLUSION

For the foregoing reasons, the Circuit should deny Appellants' motion to vacate the district court's order and judgment below.

Respectfully submitted,

20

Dated: December 18, 2025          *s/ Kshithij Shrinath*

Kshithij Shrinath, Reg. No. 0505164
GREENE ESPEL PLLP
222 S. Ninth Street, Suite 2200
Minneapolis, MN  55402
kshrinath@greeneespel.com
(612) 373-0830

Sarah Gad, Reg. No. 0403328
GAD & GAD LAW OFFICES LLP
8 East 25th Street
Minneapolis, MN 55404
sarah@gadlawoffice.com
(612) 512-1870

Teresa Nelson, Reg. No. 0269736
Benjamin Casper, Reg. No. 0276145
AMERICAN CIVIL LIBERTIES UNION OF
MINNESOTA
P.O. Box. 14720
Minneapolis, MN 55414
tnelson@aclu-mn.org
bcasper@aclu-mn.org
(651) 645-4907

Linus Chan, Reg. No. 0403311
JAMES H. BINGER CENTER FOR NEW
AMERICANS, UNIVERSITY OF
MINNESOTA LAW SCHOOL
190 Mondale Hall
229 19th Street South
Minneapolis, MN 55455
rlchan@umn.edu
(612) 301-1156

*Attorneys for Petitioner-Appellee*

21

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 27(d), the undersigned certifies that this response is proportionally spaced, has a Times New Roman typeface of 14 points, and was prepared using Microsoft Word 365, which reports that the brief contains 4,624 words.

Dated: December 18, 2025

*s/ Kshithij Shrinath*
Kshithij Shrinath

22

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/ Kshithij Shrinath*
Kshithij Shrinath

23